UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TRUSTEES OF THE PAVERS AND ROAD BUILDERS
DISTRICT COUNCIL WELFARE, PENSION, AND
ANNUITY FUNDS and TRUSTEES OF THE LOCAL
1010 APPRENTICESHIP, SKILL IMPROVEMENT, AND
TRAINING FUND,

                              Plaintiffs,          **REPORT AND**
                                              **RECOMMENDATION**
      -against-                         23-CV-5856-DLI-SJB

RICI CORP.,

                              Defendant.
-------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

      The Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds and the Trustees of the Local 1010 Apprenticeship, Skill Improvement, and Training Fund (collectively, "Plaintiffs" or the "Funds") commenced this action on August 2, 2023 against Rici Corp. ("Rici") for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA") and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"). (Compl. dated Aug. 2, 2023 ("Compl."), Dkt. No. 1 ¶ 1). Plaintiffs seek recovery of unpaid contributions and interest, assessment fees, liquidated damages, and attorney's fees and costs. (*Id.* Prayer for Relief). Rici failed to answer or otherwise respond to the Complaint. The Clerk of Court entered a default against Rici, (Clerk's Entry of Default dated Oct. 12, 2023 ("Clerk's Entry of Default"), Dkt. No. 9), and Plaintiffs subsequently moved for default judgment. (Mot. for Default J. dated Dec. 11, 2023 ("Default J. Mot."), Dkt. No. 10).

      For the reasons stated below, it is respectfully recommended that Plaintiffs' motion for default judgment be granted and judgment be entered as detailed herein.

FACTUAL AND PROCEDURAL BACKGROUND

The Funds are employer and employee trustees of multi-employer labor-management trust funds, operated in accordance with Section 302(c) of the LMRA, 29 U.S.C. § 186(c).  (Compl. ¶ 4).  They administer benefit plans under Section 3(3) of ERISA, 29 U.S.C. § 1002(3).  (*Id.*).

Rici is a New Jersey corporation, (*id.* ¶¶ 5, 8), and an employer under ERISA and LMRA.  (*Id.* ¶ 5).  In June 2021, Rici entered into a Project Labor Agreement with the New York City School Construction Authority ("SCA").  (Decl. of Keith Loscalzo in Supp. of Default J. Mot. ("Lozcalzo Decl."), Dkt. No. 11 ¶ 6; Project Labor Agreement Letter of Assent ("Assent Letter"), Dkt. No. 11-2.  By executing the Assent Letter in 2021, Rici became a party to the SCA Project Labor Agreement ("PLA"), for the period 2021 to 2025, and the collective bargaining agreement ("CBA") with the Highway, Road and Street Construction Laborers Local Union 1010 (the "Union"), unless the CBA terms conflicted with the PLA.  (Loscalzo Decl. ¶¶ 8, 10; Project Labor Agreement Covering 2021–2025 ("2021–2025 PLA"), attached as Ex. D to Loscalzo Decl., Dkt. No. 11-4; Agreement Between Laborers Local Union 1010 and Employer for July 2021–June 30, 2024 ("2021–2024 CBA"), attached as Ex. G to Loscalzo Decl., Dkt. No. 11-7).  Trust agreements that established the Funds are incorporated into the CBA.  (Compl. ¶ 10; Agreements and Decl. of Trust of Pavers & Road Builders District Council Annuity Fund as amended on Jan. 1, 2016 ("Trust Agreements"), attached as Ex. H to Decl. of Joseph Montelle ("Montelle Decl."), Dkt. No. 12-1).  Pursuant to Article VI of the Trust Agreements, the Funds promulgated a collection policy for delinquent fringe benefit contributions (the "Collection Policy").  (*See* Compl. ¶ 12; Montelle Decl. ¶ 7.  *See generally* Policy for Collection of Delinquent Fringe Benefit Contributions ("Collection

Policy"), attached as Ex. I to Montelle Decl., Dkt. No. 12-2).  The Collection Policy was incorporated into the CBA.  (*See* Montelle Decl. ¶¶ 5–7).

Under the PLA, CBA, Trust Agreements, and Collection Policy, Rici has certain payment and recordkeeping obligations.  Rici is obligated to make benefit contributions, at rates specified in the CBAs, based on the number of hours worked by Union employees.  (*See* Compl. ¶¶ 13–14; CBA art. IX, sec. 1).  Rici is also obligated to submit remittance reports detailing the number of hours worked by each employee ("Covered Work").  (Loscalzo Decl. ¶ 21; CBA art. IX, sec. 1(c)).  Lastly, Rici is required to forward specified Union dues ("union assessments") to the Funds.  (Compl. ¶ 14).

Rici was obligated to pay all benefit contributions and union assessments under a "one-check" system.  (Loscalzo Decl. ¶¶ 22–23).  The contributions and remittance reports were due "on or before the 35th day following the close of the month in which the hours were worked."  (Compl. ¶ 16).  Zenith American Solutions, Inc. ("Zenith") was hired as a third-party administrator for the Funds to monitor Rici's payment of benefit contributions and union assessments.  (Decl. of Philip Wilson in Supp. of Default J. Mot. ("Wilson Decl."), Dkt. No. 13 ¶¶ 3, 6–8).  Zenith monitors contribution payments and compares them to remittance reports submitted by employers to determine whether the correct amount has been paid.  (*See* Mem. of Law in Supp. of Pls.' Mot. for Default J. ("Pls.' Mem. of Law"), Dkt. No. 15 at 4).

Under the Collection Policy, if an employer is "two or more months delinquent" in making contributions or submitting remittance reports to Zenith, the Funds are entitled to (1) the payment of the unpaid contributions and union assessments; (2) "late payment interest" on the unpaid contributions, at a rate of 10% annually; (3) liquidated damages, in the amount of 10% of the unpaid contributions; and (4) attorney's fees and

costs incurred.  (Compl. ¶¶ 18–21; Montelle Decl. ¶¶ 8–11).  If the Funds are unable to perform an audit or otherwise obtain Rici's remittance reports, they are entitled to estimate the amount of unpaid contributions, using the formula provided in the Collection Policy, for the purposes of calculating damages.  (Compl. ¶ 18; Collection Policy art. IV, ¶ 9).  The formula provides as follows:

> Where an employer is two or more months delinquent . . . the Board may project as the amount of the delinquency the greater of (a) the average of the monthly payments based on reports actually submitted by the employer for the last three (3) months for which payments and reports were submitted or (b) the average of the monthly payments based on reports actually submitted by the Employer for the last twelve (12) months for which payments and reports were submitted. . . .  The projection may be used as a determination of payments due for each delinquent month[.]

(Collection Policy art. IV, ¶ 9).

On August 2, 2023, Plaintiffs filed this suit alleging: (1) failure to make benefit contributions under Section 515 of ERISA, 29 U.S.C. § 1145, (Compl. ¶¶ 30–35); and (2) violation of the CBAs under Section 301 of the LMRA, (*id.* ¶¶ 36–40).  Rici was served with a summons and Complaint at its business address, 46 Hobart Place, Garfield, New Jersey.  (Summons Return Executed dated Aug. 6, 2023, Dkt. No. 5).  Despite proper service, Rici failed to appear, answer, or otherwise respond to the Complaint.  Plaintiffs sought a certificate of default, (Req. for Certificate of Default dated Oct. 10, 2023, Dkt. No. 8), which was granted by the Clerk of Court.  (Clerk's Entry of Default).  Plaintiffs moved for default judgment.  Rici was served with a copy of the motion and accompanying papers at its business address, in compliance with Local Civil Rule 55.2(c).  (Certificate of Service dated Dec. 12, 2023 ("Certificate of Service"), Dkt. No. 16).

<u>DISCUSSION</u>

I.   <u>Entry of Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2). The Clerk of Court entered a default against Rici on October 12, 2023. (Clerk's Entry of Default).

The next question, before reaching liability or damages, is whether Rici's conduct is sufficient to warrant entry of a default judgment. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, Rici's failure to respond to the Complaint demonstrates its default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865,

2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff default judgment against them).  A summons and a copy of the Complaint was served on Rici on August 4, 2023.  (Summons Return Executed dated Aug. 6, 2023, Dkt. No. 5). The motion for default judgment and supporting papers were also served on Rici via certified mail to Rici's last known business address.  (Certificate of Service). Notwithstanding this notice and service, Rici did not respond to the Complaint, did not appear, and has not in any way attempted to defend itself.

As to the second factor, the Court cannot conclude there is any meritorious defense to Plaintiffs' allegations because Rici did not appear, and no defense has been presented to the Court.  *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

Third, Plaintiffs would be prejudiced if the motion for default judgment is denied, "as there are no additional steps available to secure relief in this Court."  *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Order (Jan. 26, 2009); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors weigh in favor of the entry of default judgment.  The Court now turns to the liability imposed, damages, and other relief to be awarded.

## II.   Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiffs'] factual allegations as true and draw all reasonable inferences in [their] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (3d ed. 2017). "Only after the district court is convinced that the facts meet the elements of the relevant cause of action—whether those facts are established by well-pleaded allegations or proven by admissible evidence—may the district court enter a default judgment." *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024).

### A.   Violation of Section 515 of ERISA

Plaintiffs have established that Rici violated ERISA by failing to make contributions as required by the agreements, including under the CBAs and Collection Policy. Section 515 of ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms . . . of a collectively bargained agreement shall . . . make such contributions." 29 U.S.C. § 1145; *see also Flanagan v. Marco Martelli Assocs., Inc.*, No. 13-CV-6023, 2015 WL 1042279, at *8 (E.D.N.Y. Mar.

9, 2015) (noting that, under Section 515, "employers are required to pay fringe benefit contributions pursuant to an effective collective bargaining agreement").  Trustees of a plan may, pursuant to Section 502, bring an action to enforce this requirement.  *See* 29 U.S.C. § 1132(a)(3); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313–14 (2d Cir. 1990).

To establish a violation of Section 515, Plaintiffs must show that Rici (1) is an employer; (2) is bound by a CBA that required payment of contributions; and (3) failed to make those contributions.  *See, e.g.*, *Health & Welfare Fund of the United Food & Com. Workers Loc. 2013 v. Precision Abstract, LLC*, No. 16-CV-4690, 2017 WL 4325713, at *3 (E.D.N.Y. May 19, 2017), *report and recommendation adopted*, 2017 WL 4296740, at *1 (Sept. 26, 2017).  Rici is alleged to be an employer within the meaning of ERISA, (Compl. ¶ 5), and the Funds are alleged to be employee benefit plans as defined by ERISA.  (*Id.* ¶ 4).

Plaintiffs allege that the CBA obligated Rici to make benefit contributions, which it failed to do, in February 2022, May 2022 through August 2022, and January through

October 2023. (*Id.* ¶¶ 33–34; Pls.' Mem. of Law at 15).[1] This is sufficient to establish a violation of Section 515. *See, e.g.*, *Trs. of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 16-CV-318, 2018 WL 4268907, at *3–*4 (E.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4266038, at *1 (Sept. 5, 2018); *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011) (recommending that the employer's failure to make contributions to employee-benefit funds pursuant to a collective-bargaining agreement "constitutes a violation of ERISA"), *report and recommendation adopted*, 2011 WL 5402898, at *1 (Nov. 4, 2011); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) ("The allegations in plaintiff's complaint establish the elements of liability required to state a claim under section 515 of ERISA. . . . Plaintiff alleges that defendant entered into an

---

[1] Plaintiffs' memorandum of law indicates Rici failed submit reports from January to October 2023. (Pls.' Mem. of Law at 1, 4, 10–11, 15). The Complaint, however, only alleges a deficiency from January to May 2023. (Compl. ¶ 34).

> [A] district court has discretion to award ERISA damages that accrue during the pendency of an action . . . [a]lthough Rule 54(c) limits the damages recoverable by a plaintiff following a default judgment to the type and quantity of damages demanded in the complaint[.] Rule 54(c) is not violated . . . when a court awards damages that accrued during the pendency of the litigation if the complaint put defendant on notice that plaintiff might seek such damages for example by including in the complaint a request for unpaid contributions that might become due and owing during the litigation[.]

*Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp.*, No. 20-CV-1834, 2022 WL 584536, at *7 (E.D.N.Y. Feb. 3, 2022) (first alteration added) (quotations omitted), *report and recommendation adopted*, 2022 WL 580959, at *1 (E.D.N.Y. Feb. 24, 2022). The Complaint seeks "any additional delinquent benefit contributions, union assessments and dues, interest, liquidated damages, and attorneys' fees determined to be due according to the CBA for any months that are unpaid as of the date of judgment[.]" (Compl. Prayer for Relief). And, as such, Rule 54(c) is not a barrier to the recovery sought here.

agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions.") (adopting report and recommendation).

B.   Breach of the CBA Under LMRA

As noted above, a breach of a CBA is a claim under Section 301 of the LMRA.  The CBA that Rici was bound to obligated it to remit specified benefit contributions to the Funds on behalf of its employees.  (Compl. ¶ 13).  Plaintiffs allege that Rici failed to make benefit contributions in the following periods: February 2022, May 2022 through August 2022, and January through October 2023.  (*Id.* ¶¶ 33–34; Pls.' Mem. of Law at 15).  These breaches give rise to Section 301 liability.  *See, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. Genrus Corp.*, No. 20-CV-4980, 2021 WL 4755704, at *2 (E.D.N.Y. Aug. 16, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 3928952, at *2 (Sept. 2, 2021); *Gesualdi v. D & E Top Soil & Trucking, Inc.*, No. 11-CV-5938, 2013 WL 1729269, at *3 (E.D.N.Y. Mar. 26, 2013) (finding, on a motion for default judgment, that defendant's "failure to pay contributions when they were due in breach of the CBA . . . violates section 301(a) of the LMRA.").

III.   Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158.  "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations

omitted).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (collecting cases).  Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

A.    Unpaid Contributions

A plaintiff who has established liability under Section 515 of ERISA is entitled to an award of: "(1) the amount of unpaid contributions, (2) interest on the unpaid contributions, (3) liquidated damages, (4) reasonable attorney's fees and costs, and (5) such other legal and equitable relief as the court deems appropriate." *Lanzafame v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 259 (E.D.N.Y. 2007) (citing 29 U.S.C. § 1132(g)(2)); *see also Iron Workers Dist. Council of W.N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1505–08 (2d Cir. 1995).  Plaintiffs are also entitled, pursuant to Section 301 of the LMRA, to the unpaid contributions not covered by ERISA but unpaid or paid late in violation of the CBAs or other agreements.  *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C, 15D v. A.G.*

*Constr. Corp.*, No. 13-CV-3590, 2014 WL 354647, at *3 (E.D.N.Y. Jan. 31, 2014) (adopting report and recommendation) (collecting cases).

Plaintiffs provided contribution discrepancy reports ("Discrepancy Reports") generated by Zenith on behalf of the Funds. (*See* Employer Discrepancy Status Report dated Nov. 28, 2023 ("Discrepancy Report"), attached as Ex. P to Wilson Decl., Dkt. No. 13-1; Delinquent Employers Report dated Dec. 8, 2023 ("Missing Reports"), attached as Ex. Q to Wilson Decl., Dkt. No. 13-2). Plaintiffs also provided a report from SCA detailing all the hours of work performed by Rici employees on SCA projects. (SCA Hourly Tracking Report, attached as Ex. J to Montelle Decl., Dkt. No. 12-3).

> 1.   Unreported Hours February 2022 and May Through August 2022

Rici failed to report 150 hours of Covered Work performed by its employees on various SCA projects in February 2022 and from May through August 2022. (Wilson Decl. ¶¶ 11–12). Plaintiffs multiplied these hours by the applicable benefit rates and determined Rici failed to submit contributions of $6,289.72 and union assessments of $557.55. (Montelle Decl. ¶ 16; *see* Interest and Liquidated Damages SCA Hourly Tracking Report Hours ("SCA Calculations"), attached as Ex. K to Montelle Decl., Dkt. No. 12-4).

Plaintiffs' calculations are erroneous. Rici failed to report 150 hours of Covered Work for February 2022 and May through August 2022. (Montelle Decl. ¶ 15; *see* SCA Calculations at 2–5). The delinquent period spans two benefit rate periods: February through June 2022, with a benefit rate of $48.51; and July through August 2022, with a benefit rate of $50.49. (SCA Calculations at 6, 8). The Court multiplied the number of hours by the applicable benefit rate for each respective fund, and then added the totals for the Welfare Fund, Income Replacement Fund ("IRF"), Pension Fund, and Annuity

Fund to determine the unpaid contributions. The Court separately totaled the totals for Local 1010 Training Fund, Local 1010 LECET, NYS LECET, and NYS Laborers Health & Safety Fund to determine unpaid union assessments. The Court found that Rici failed to pay $2,146.36 in contributions and $85.10 in union assessments for the unreported hours worked in February, May, and June 2022 (46 hours); and $5,027.36 in contributions and $192.40 in union assessments for unreported hours worked in July and August 2022. The Court recommends awarding $7,173.72 in unpaid contributions and $277.50 in unpaid union assessments for unreported hours in February 2022 and May through August 2022.

2.     <u>Remittance Period of July Through August 2022</u>

According to the Discrepancy Report, Rici failed to remit reported contributions of $3,867.20 and union assessments of $172.00 from July through August 2022. (*See* Discrepancy Report at 1–2; Wilson Decl. ¶ 9). Having verified these calculations, the Court recommends awarding $3,867.20 in unpaid contributions and $172.00 in union assessment fees based on the remittance reports.

3.     <u>Remittance Period of January through October 2023</u>

Rici failed to submit remittance reports for January through October 2023. (Wilson Decl. ¶ 10; *see* Missing Reports). For the period of January through October 2023, Plaintiffs provided an estimation of unpaid contributions and union assessment fees. (*See* Estimation Calculation Re: Estimated Amounts ("Estimated Calculations"), attached as Ex. M to Montelle Decl., Dkt. No. 12-6), using the formula outlined in the Collection Policy. (*See* Collection Policy art. IV, ¶ 9). Pursuant to that formula, Plaintiffs first determined the total amount of contributions and union assessments for the most recent 12 months for which hours were reported. (*Id*.; Montelle Decl. ¶¶ 21–

13

22).  The Funds then compared the 12-month average to the 3-month average, and as permitted by the Collection Policy, opted to utilize the higher of those two averages, the 3-month average ($7,907.22).  (Montelle Decl. ¶ 23 & nn.2–3).  The Funds estimated the number of hours worked for the delinquent period by taking the 3-month average and dividing it by the total benefit rate ($50.49 for January through June 30, 2023, and $52.17 for July through October 31, 2023).  (*Id.* ¶¶ 24–27; *see* Rate Sheets, attached as Ex. N to Montelle Decl., Dkt. No. 12-7 at 1, 3).[2]  Based on the 3-month average, Rici was obligated to make payments for 156.61 hours per month for January through June 2023, and 151.57 hours per month for July through October 2023.  (Montelle Decl. ¶¶ 26–27). The Funds then multiplied the number of hours per month by the benefit rates for each fund.  (*Id.* ¶ 28).  These calculations lead to the following total estimates: $7,570.52 in unpaid contributions and $334.71 in union assessment fees per month for January through June 2023, totaling $45,423.12 in unpaid contributions and $2,020.26 in union assessment fees for that period; and $7,551.16 in unpaid contributions and $356.19 per month for July through October 2023, totaling $30,204.64 in unpaid contributions and $1,424.76 in unpaid union assessment fees for that period.  (*Id.* ¶¶ 33–35).

Having verified Plaintiffs' calculations, (Estimated Calculations at 1), the Court recommends awarding $75,627.76 in unpaid contributions and $3,445.02 in union assessment fees for the period of January through October 2023.

B.    Interest

Plaintiff seeks interest on unpaid contributions, as provided for by ERISA, at an annual rate of 10% through the date of judgment.  (Pls.' Mem. of Law at 14–15).

---

[2] The delinquent period spans two benefit rate periods (July 1, 2022 through June 30, 2023, and July 1, 2023 through June 30, 2024).  (Montelle Decl. ¶ 25).

"ERISA entitles Plaintiff[s] to interest on all ERISA [c]ontributions that were unpaid at the time the complaint was filed, as well as those that accrued while the lawsuit was pending." *Finkel v. Detore Elec. Constr. Co.*, No. 11-CV-814, 2012 WL 1077796, at *8 (E.D.N.Y. Mar. 6, 2012) (citing 29 U.S.C. § 1132(g)(2)(B)), *report and recommendation adopted*, 2012 WL 1078470, at *1 (Mar. 30, 2012).  The relevant plan's terms impose liability on Rici for the unpaid ERISA contributions at an annual rate of 10%, calculated from the due date.  (Collection Policy art. II, ¶ 5).  Plaintiffs calculated the applicable interest from the date that each month's contribution was due through December 8, 2023.  (Montelle Decl. ¶¶ 38, 42, 45; SCA Calculations at 1; Estimated Calculations at 3; Interest and Liquidated Damage Calculations July–August 2022 ("July–August 2022 Interest Calculations"), attached as Ex. O to Montelle Decl., Dkt. No. 12-8).  They seek: $849.41 for February 2022 and May through August 2022 (unreported hours); $464.66 for July–August 2022 (discrepancy report); and $2,910.42 for January through October 2023.  (Montelle Decl. ¶¶ 38, 42, 45).

Under the Court's calculations, the correct amount of unpaid interest for February 2022 and May through August 2022 is $956.01.

| Month | Due Date | Interest Through | Unpaid Contributions | Daily Interest (at 10%) | Days Late | Total Interest |
|---|---|---|---|---|---|---|
| February 28, 2022 | April 4, 2022 | December 8, 2023 | $1,679.76 | $0.46 | 613 | $281.98 |
| May 31, 2022 | July 5, 2022 | December 8, 2023 | $93.32 | $0.03 | 521 | $15.63 |
| June 30, 2022 | August 4, 2022 | December 8, 2023 | $373.28 | $0.10 | 491 | $49.10 |
| July 31, 2022 | September 4, 2022 | December 8, 2023 | $1,933.60 | $0.53 | 460 | $243.80 |
| August 31, 2022 | October 5, 2022 | December 8, 2023 | $3,093.76 | $0.85 | 430 | $365.50 |
| | | | | | | |
| | | | | TOTAL | | $956.01 |

Plaintiffs' calculations for the interest on the unpaid contributions from July through August 2022 are correct: Plaintiffs are owed $464.66 in interest for those unpaid contributions.  (July–August 2022 Interest Calculations ($0.32 in daily interest for July and $0.74 in daily interest for August)).  Further, Plaintiffs calculations for interest on

the estimated unpaid contributions from January to October 2023 are also correct, and Plaintiffs are entitled to $2,910.42 in interest ($2.07 in daily interest) for those estimated unpaid contributions. (Estimated Calculations at 3).

Accordingly, the Court recommends that Plaintiffs be awarded a total of $4,331.09 in pre-judgment interest through December 8, 2023, and $23.73 per day until judgment is entered. *See, e.g.*, *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. Focus Constr. Grp., Inc.*, No. 23-CV-1710, 2023 WL 7687844, at *3 (E.D.N.Y. Oct. 10, 2023).

C.    Liquidated Damages

Plaintiffs also seek liquidated damages. (Compl. Prayer for Relief; Pls.' Mem. of Law at 14–15; SCA Calculations at 1; Estimated Calculations at 3; July–August 2022 Interest Calculation). "Section 502 of ERISA provides for liquidated damages . . . as provided in the collective bargaining and trust agreements." *Sullivan*, 2011 WL 5401987, at *6; *see* 29 U.S.C. § 1132(g)(2)(C). The same is true under the CBA and the Collection Policy. (CBAs art. IX, sec. 5(c); Collection Policy art. II, ¶ 5 ("Employers shall be liable for . . . liquidated damages of ten percent (10%) of the amount of delinquent [c]ontributions[.]")). Ten percent of the total unpaid contributions awarded ($86,668.68) is $8,666.87, and the Court recommends that Plaintiffs be awarded this amount in liquidated damages. *See, e.g.*, *Finkel v. INS Elec. Servs. Inc.*, No. 06-CV-4862, 2008 WL 941482, at *9 (E.D.N.Y. Apr. 4, 2008) (awarding liquidated damages under a CBA) (adopting report and recommendation).

D.    Attorney's Fees and Costs

Plaintiffs seek $6,691.00 in attorney's fees and $479.12 in costs. (Pls.' Mem. of Law at 14–15; Decl. of Adrianna R. Grancio in Supp. of Default J. Mot. ("Grancio Decl."),

Dkt. No. 14 ¶ 20; Professional Services Invoice ("Att'y Invoice"), attached as Ex. W to Grancio Decl., Dkt. No. 14-6).

Pursuant to Section 502 of ERISA, where an action is brought by a fiduciary to enforce Section 515 of ERISA, the court "shall award . . . reasonable attorney's fees . . . to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). The Trust Agreements and Collection Policy also provide for attorney's fees if the Funds must litigate to enforce payment obligations. (*See* CBAs art. IX, sec. 5(b); Collection Policy art. II, ¶ 5 ("Employers shall be liable for . . . in the event a legal action is commenced, all costs including, but not limited to, . . . attorneys' fees, disbursements and court costs.")).

In assessing whether legal fees are reasonable, a court must determine the "presumptively reasonable fee" for an attorney's services by examining what a reasonable client would be willing to pay. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. *Id.* The next step is to determine the reasonableness of the hours expended by counsel. *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4–*5 (E.D.N.Y. Feb. 26, 2007), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770, at *3 (Mar. 19, 2008). The number of hours spent on a lawsuit are considered unreasonable if they are "excessive, redundant, or otherwise unnecessary." *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (adopting report and recommendation) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

Turning first to the reasonable hourly rate, the Court examines the experience and qualifications of counsel seeking the fee award.  In her affidavit, Plaintiffs' counsel Adrianna R. Grancio states that she is a 2016 graduate of St. John's University School of Law and a partner at her firm.  (Grancio Decl. ¶ 15).  She has handled several ERISA collection actions since joining the firm.  (*Id.*).  Her regular hourly billing rate is $290. (*Id.*).  Co-counsel Jennifer Graw is a 2019 graduate of Brooklyn Law School and was an associate at V&A.  (*Id.* ¶ 16).  Her hourly billing rate was $290.  (*Id.*).  Co-counsel Jayden Peters is a 2021 graduate of Widener University Commonwealth Law School and is an associate at the firm.  (*Id.* ¶ 17).  He also had experience as a legal assistant at the firm.  (Grancio Decl. ¶ 17).  His regular hourly billing rate is also $290.  (*Id.*).  Finally, two legal assistants (Eva Keating and Abigail Frankel) worked on this matter, and they billed at an hourly rate of $115.  (Grancio Decl. ¶ 14 & n.1).

In ERISA matters, courts in the Eastern District of New York have approved hourly rates of $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals.  *E.g.*, *Trs. of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Coop. Funds v. Northcoast Maint. Corp.*, No. 17-CV-5072, 2018 WL 2471201, at *4 (E.D.N.Y. May 4, 2018).  As such, the Court finds that the rate of $290 for both Ms. Grancio, Ms. Graw, and Mr. Peters is reasonable.  However, counsel failed to provide any information about the experience and skill of the two legal assistants who also worked on this matter, and thus, they have provided no compelling justification to award an hourly rate higher than that typically given to paralegals.  *See, e.g.*, *ACE Ltd. v. CIGNA Corp.*, No. 00-CV-9423, 2001 WL 1286247, at *6 (S.D.N.Y. Oct. 22, 2001) ("CIGNA's failure to produce adequate information regarding its attorneys' and paraprofessionals' rates alone justifies a

18

reduction in fees.") (collecting cases). Thus, the Court recommends that Ms. Keating's and Ms. Frankel's hourly rates be lowered to $70.

As to the reasonableness of the time expended, counsel spent 24.4 hours on this case. (Att'y Invoice at 6). Counsel submitted contemporaneous billing records, (*id.*), which are required for the Court to award attorney's fees. *See Daniello v. Planned Sys. Integration Ltd.*, No. 07-CV-1729, 2009 WL 2160536, at *6 (E.D.N.Y. July 17, 2009) ("This Circuit requires contemporaneous billing records for each attorney, documenting the date, the hours expended, and the nature of the work."). Twenty-four hours expended for an ERISA default judgment case is reasonable. *See, e.g.*, *Trs. of the Pavers v. Regimental Contracting, LLC*, No. 22-CV-3757, 2023 WL 2969471, at *6 (E.D.N.Y. Feb. 27, 2023) (finding it reasonable that counsel devoted 20.2 hours to the case) (collecting cases), *report and recommendation adopted*, Order (Oct. 19, 2023); *see also Gesualdi v. Fortunata Carting, Inc.*, 5 F. Supp. 3d 262, 281 (E.D.N.Y. 2014) ("Courts have found that 25 hours is a typical amount of time to spend on a straightforward ERISA default case.").

As such, the Court respectfully recommends that Plaintiffs be awarded $6,592.00 in attorney's fees, as shown below.

|  | Ms. Grancio | Ms. Graw | Mr. Peters | Ms. Keating | Ms. Frankel |
|---|---|---|---|---|---|
| Requested Billing Rate | $290 | $290 | $290 | $115 | $115 |
| Awarded Billing Rate | $290 | $290 | $290 | $70 | $70 |
| Hours Billed | 14.9 | 5.4 | 1.9 | 0.5 | 1.7 |
| Attorney's Fees | $4,321 | $1,566 | $551 | $35 | $119 |
|  |  |  |  | TOTAL | $6,592 |

In addition, Plaintiffs seek reimbursement for $479.12 in costs, including the $402 filing fee, $75 in service of process fees, $1.25 in research fees, and $0.87 in postage. (Grancio Decl. ¶ 22; Att'y Invoice at 6). ERISA provides that "[a]n award of reasonable costs is mandatory in a successful action to recover delinquent

contributions." *Finkel v. Detore Elec. Constr. Co.*, No. 11-CV-814, 2012 WL 1077796, at *12 (E.D.N.Y. Mar. 6, 2012), *report and recommendation adopted*, 2012 WL 1078470, at *1 (Mar. 30, 2012); *see also* 29 U.S.C. § 1132(g)(2)(D). Recoverable costs include "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." *Detore Elec. Constr. Co.*, 2012 WL 1077796, at *12 (alteration in original) (quoting *Trs. of the Road Carriers Loc. 707 Welfare Fund v. Goldberg, No. 08-CV-884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009) (adopting report and recommendation)).* Plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008).

Since the docket indicates that the $402 filing fee was paid, (*see* Dkt. No. 1), it should be awarded. *E.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (adopting report and recommendation in part); *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *11 (S.D.N.Y. Mar. 29, 2017) (stating that the filing fee is "a fact of which the Court can take judicial notice"), *report and recommendation adopted*, 2017 WL 1906902, at *2 (May 9, 2017). Plaintiffs provided an invoice indicating the cost of service was $75.00, (Service of Process Invoice, attached as Ex. X to Grancio Decl., Dkt. No. 14-7); accordingly, the Court should award this cost. *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017) (recommending that the plaintiffs not be awarded process server fees absent supporting documentation and noting that "failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery"), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 174714, at *1 (Oct. 18, 2017); *Sheldon v. Plot Com.*, No. 15-CV-5885, 2016 WL 5107072,

at *20 (E.D.N.Y. Aug. 26, 2016) (recommending costs for serving defendant "be denied due to lack of adequate documentation"), *report and recommendation adopted*, 2016 WL 5107058, at *1 (Sept. 19, 2016).  The Court also finds Plaintiffs' $0.87 in postage costs and $1.25 in research costs reasonable.  *See Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp.*, No. 20-CV-1834, 2022 WL 584536, at *11 (E.D.N.Y. Feb. 3, 2022), *report and recommendation adopted*, 2022 WL 580959, at *1 (Feb. 24, 2022).

The Court therefore respectfully recommends that Plaintiffs be awarded $479.12 in costs.

E.    Post-Judgment Interest

Plaintiffs seek an award of post-judgment interest at the statutory rate.  The

Second Circuit has recognized that "[t]he award of post-judgment interest is mandatory

on awards in civil cases as of the date judgment is entered."  *Lewis v. Whelan*, 99 F.3d

542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)).  "The post-judgment interest rate

in an ERISA action is tied 'to the weekly average 1-year constant maturity Treasury

yield . . . for the week preceding the date of judgment.'"  *Genworth Life & Health Ins.*

*Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008) (alteration in original)

(quoting 28 U.S.C. § 1961(a)).  The Court therefore recommends post-judgment interest

be granted on the total award, at the rate set forth in 28 U.S.C. § 1961, calculated from

the date on which the Clerk of Court enters final judgment until the date of payment.

CONCLUSION

For the reasons stated, it is respectfully recommended that a default judgment be

entered against Rici, and that Plaintiffs be awarded:

- $86,668.68 in unpaid contributions and $3,894.52 in union assessment fees;

- $4,331.09 in pre-judgment interest;

- Pre-judgment interest in the amount of $23.73 per day from December 8, 2023 until the day judgment is entered;

- $8,666.87 in liquidated damages;

- Post-judgment interest on the total award calculated at the rate set forth in 28 U.S.C. § 1961 from the day the Clerk of Court enters final judgment until the date of payment;

- $6,592 in attorney's fees; and

22

- $479.12 in costs.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

Plaintiffs are directed to serve a copy of this Report and Recommendation on Rici and file proof of such service on the docket.

SO ORDERED.

*/s/ Sanket J. Bulsara*  August 19, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

23